UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　Plaintiff,<br><br>　　v.<br><br>CHERYL J. LATOS;<br>JAMES E. ANDERSON; and<br>THE STATE OF RHODE ISLAND,<br>　　　Defendants. | C. A. No. 12-504-M |

## MEMORANDUM AND ORDER

Plaintiff, the United States of America, has moved for summary judgment (ECF No. 13) seeking to enforce its pre-bankruptcy federal tax liens with regard to the tax liabilities of Cheryl J. Latos and James E. Anderson[1] for the years 1994-1997 against the house and land that Ms. Latos owns in Wood River Junction, Rhode Island. The United States wants this Court to issue an order allowing the sale of Ms. Latos' real property to satisfy the tax liens that it filed almost ten years ago.

Ms. Latos defends this suit by attempting to re-litigate decades of court decisions holding her liable for four years of unpaid taxes. This defense is not available because these issues have been aired fully in numerous courts and resolved definitively years ago. Because there are no genuine issues of material fact, the law clearly entitles the government to enforce its tax liens, and all other methods of resolving this dispute short of the sale of her home have been exhausted, this Court GRANTS the Motion for Summary Judgment filed by the United States (ECF No. 13) and will enter final judgment in its favor.

---

[1] The clerk entered default against Mr. Anderson on October 31, 2012 (ECF No. 11) because Mr. Anderson never responded to the complaint after the United States properly served him with a summons and the complaint. (ECF No. 3.)

I.  **Facts.**

Since Ms. Latos did not dispute any of the facts, this Court takes the facts from the Statement of Undisputed Facts submitted by the United States (ECF No. 14). *See* D.R.I. L.R. Civ. 56(a)(3).

Mr. Anderson worked as a commercial fisherman during the period between 1994 and 1997. He and Ms. Latos were married during those years and filed joint Form 1040 for the tax years 1994-1997, though they later divorced in approximately 2004. This case began as a dispute between Mr. Anderson and Ms. Latos and the Internal Revenue Service as to whether Mr. Anderson was a wage earning employee or a self-employed individual.

A.  **The Tax Assessments.**

1.  **1994 Tax Year.**

Mr. Anderson and Ms. Latos did not report or pay any self-employment tax with regard to Mr. Anderson's work as a commercial fisherman on their joint Form 1040 for the tax year 1994. The IRS determined a deficiency in self-employment tax, pursuant to 26 U.S.C. § 1401, and issued a statutory notice of deficiency, pursuant to 26 U.S.C. § 6212, for $8,099. Mr. Anderson and Ms. Latos filed a protest with the IRS Office of Appeals, arguing that Mr. Anderson was not self-employed during 1994 but rather was a wage-earning employee who was subject to withholding under 26 U.S.C. § 1301, *et seq.*, and that they could not be held liable for taxes that his employer had failed to withhold from his wages. The IRS rescinded the notice of deficiency that it had based on liability for self–employment tax and assessed only the

proposed Federal Insurance Contribution Act (FICA) tax amount of $4,806, as well as $1,400.66 in interest.[2]

### 2. The 1995 Tax Liability.

For the 1995 income tax year, Mr. Anderson and Ms. Latos filed a joint Form 1040 that reported Mr. Anderson's fishing income on Schedule C[3] but did not report any self-employment tax, or income, or employment taxes withheld. The IRS issued a notice of deficiency. The deficiency was not resolved through the administrative process and the IRS issued a second notice of deficiency for self-employment tax to Mr. Anderson and Ms. Latos. After Mr. Anderson and Ms. Latos failed to file a timely petition with the Tax Court to challenge the second notice of deficiency, the IRS assessed the 1995 self-employment tax deficiency in the amount of $8,107, as well as interest of $1,115.43.

Mr. Anderson and Ms. Latos sought the assistance of the IRS's Taxpayer Advocate's Office, and a representative from that office recommended that Mr. Anderson and Ms. Latos' 1995 self-employment tax liability be reduced to the same amount that they would have owed if Mr. Anderson had been treated as an employee who only owed the employee's portion of FICA. Accordingly, the IRS agreed to abate $2,525 of the 1995 self-employment tax liability, and after realizing that this first abatement had been too small, abated an additional $797.58.

### 3. The 1996 and 1997 Tax Liabilities.

For the tax year 1996, Mr. Anderson and Ms. Latos filed a joint Form 1040, showing an income tax due of $4,924, but they did not pay that amount with their return. As a result, the IRS made an income tax assessment against them for $4,924. Similarly, for the tax year 1997,

---

[2] In essence, the IRS treated Mr. Anderson as an employee for tax year 1994 and only required him to pay the employee's portion of the FICA tax.
[3] Schedule C for Form 1040 is used by sole proprietors to report income or loss.

Mr. Anderson and Ms. Latos filed a joint Form 1040, showing an income tax due of $3,491, but they did not pay that amount with their return. As a result, the IRS made an income tax assessment against them in the amount of $3,491, as well as associated interest and penalties.

Ms. Latos requested technical advice from the IRS regarding whether Mr. Anderson was an employee or self-employed during the 1996 and 1997 tax years. In a Technical Advice Memorandum (TAM), the IRS concluded that Mr. Anderson was an employee in 1996 and self-employed in 1997. Consistent with the TAM, the IRS assessed FICA tax with respect to the 1996 tax year in the amount of $4,442.74, as well as interest, totaling $4,639.17.

### B. The IRS Notice of Levy, Administrative Appeal, and Judicial Review.

On February 3, 1999, the IRS issued a Notice of Intent to Levy to Mr. Anderson and Ms. Latos regarding their assessed tax liabilities for the four years 1994 through 1997. Mr. Anderson and Ms. Latos requested a Collection Due Process (CDP) hearing. After the hearing, the IRS issued two notices to Mr. Anderson and Ms. Latos — one with respect to their 1994 tax liability and one with respect to their 1995-1997 tax liability — informing them that the relief that they had requested through the CDP hearing was denied by the IRS and that the IRS's proposed collection action was sustained.

Mr. Anderson and Ms. Latos filed a petition in the Tax Court challenging the IRS's determinations in the two notices regarding their tax liabilities for 1994-1997. After the Tax Court dismissed the 1994 year for lack of jurisdiction (*Anderson v. Comm'r of Internal Revenue*, 80 T.C.M. (CCH) (461) (2000)), Mr. Anderson and Ms. Latos filed a complaint, in this Court (1:00-cv-00548-ML) challenging the government's determination that the assessed liability for the 1994 tax year was due and collectible and requesting that the government be enjoined from proceeding with collection actions against them. The District Court rejected Mr. Anderson and

Ms. Latos' argument that the employee's portion of the 1994 FICA tax liability had to be collected from the operators of the fishing vessels on which Mr. Anderson had worked, rather than from Mr. Anderson and Ms. Latos directly, concluding that under 26 C.F.R. § 31.3102-1(c), "there is a legal basis for the IRS to proceed directly against the employee for the collection of that particular tax." (ECF No. 14-31 at 9.) Accordingly, the District Court granted the United States' motion to affirm the IRS determination and entered judgment in the government's favor. *Id.* at 18. After Mr. Anderson and Ms. Latos appealed, the First Circuit affirmed in *Anderson v. United States*, 29 Fed.App'x 619 (1st Cir. 2002) and then the U.S. Supreme Court denied the taxpayers' petition for a writ of certiorari. *See Anderson v. United States*, 537 U.S. 1020 (2002).

The Tax Court proceeded to a decision regarding the 1995-1997 tax liabilities that it had not dismissed from Mr. Anderson and Ms. Latos' petition. Regarding the 1995 year, the Tax Court held that it had jurisdiction because the assessment was self-employment tax, not FICA tax and Mr. Anderson and Ms. Latos could not challenge their liability due to their failure to petition the Tax Court within 90 days of the issuance of the statutory notice of deficiency. Regarding the 1996 and 1997 income tax assessments, the Tax Court rejected their challenge, noting that the "obvious fallacy in petitioners' reasoning" that only the fishing vessel owner could be held liable for the taxes that were not withheld "is that the income tax is petitioners' obligation in the first instance" and labeling their contentions "mere protester type arguments, which are not worthy of further analysis or review." *Anderson v. Comm'r of Internal Revenue*, 85 T.C.M. (CCH) 1187 (2003). Mr. Anderson and Ms. Latos appealed, and the First Circuit affirmed, stating that, "the argument that an employer's failure to withhold income tax absolves an employee of liability for the tax is frivolous." (ECF No. 14-35 at 2.)

### C. The Notice of Federal Tax Lien, Administrative Appeal, and Judicial Review.

On November 12, 2003, the IRS filed a Notice of Federal Tax Lien (NFTL) with regard to the 1994-1997 tax liabilities of Mr. Anderson and Ms. Latos in the Town of Richmond, Rhode Island. (ECF No. 14-36.)[4] The IRS issued a NFTL Filing Under I.R.C. § 6320 to Mr. Anderson and Ms. Latos (ECF No. 14-38), who requested a CDP hearing. (ECF No. 14-39 at 2.) Ms. Latos took the position that she and Mr. Anderson were not responsible for paying tax on the amounts that Mr. Anderson received during 1995, 1996, and 1997 from his fishing activities, and that it was the fishing vessel owners' sole responsibility to pay those taxes. *See Latos v. Comm'r of Internal Revenue*, 94 T.C.M. (CCH) 257 (2007). On February 16, 2006, the IRS issued a Notice of Determination Concerning Collection Actions upholding the federal tax lien, noting that Ms. Latos had not proposed any collection alternatives at the hearing. (ECF No. 14-39.)

Ms. Latos then petitioned the Tax Court, challenging the Notice of Determination with regard to the filing of the NFTL for the 1994-1997 tax liabilities. (ECF No. 14-40.) The Tax Court dismissed the 1994 year from the case for lack of jurisdiction, as in the prior Tax Court case. (ECF No. 14-41.) Ms. Latos filed another action regarding the 1994 tax liability in this Court (1:06-cv-00514-ML). This Court entered judgment in favor of the United States, noting in its Memorandum and Order that "[t]his Court has previously ruled that the Plaintiff [Ms. Latos] is liable for FICA taxes for 1994" and that "ruling was affirmed by the Court of Appeals." (ECF No. 14-43.)

The Tax Court case regarding tax years 1995-1997 proceeded. Noting that Ms. Latos had advanced "essentially the same arguments" as she had in a prior case, *i.e.*, "that, because Mr. Anderson was an employee of the owners of the boats on which he engaged in fishing

---

[4] The IRS timely refiled the NFTLs on April 18, 2007, on April 27, 2007, on April 14, 2011, and on June 17, 2008. (ECF No. 14-37.)

activities during each of the years 1995 through 1998, each such owner, as Mr. Anderson's employer, is responsible under section 3403 for paying Ms. Latos' unpaid 1995, 1996, 1997 and 1998 liabilities," the Tax Court ruled in favor of the IRS for the same reasons as in the prior case. *Anderson v. Comm'r of Internal Revenue*, 94 T.C.M. (CCH) 257 (2007). Ms. Latos appealed, and the First Circuit affirmed the Tax Court. (ECF No. 14-45.) Ms. Latos petitioned the U.S. Supreme Court for a writ of certiorari, and it was denied. *See Latos v. Comm'r of Internal Revenue*, 129 S. Ct. 1596 (2009).

### D. The Pine Hill Road Property and the Bankruptcy.

Mr. Anderson and Ms. Latos owned the real property located at 215 Pine Hill Road, Wood River Junction, Rhode Island (Pine Hill Road Property) as tenants by the entirety. On September 10, 2004, Mr. Anderson and Ms. Latos filed a joint Chapter 7 bankruptcy petition with the United States Bankruptcy Court for the District of Rhode Island (1:04-bk-12893). (ECF No. 14-49; ECF No. 14-50.) They exempted the Pine Hill Road Property from their bankruptcy estate and received their discharge on December 10, 2004. *Id.*

By quitclaim deed dated November 17, 2004, and recorded with the Town of Richmond, Rhode Island on November 19, 2004, Mr. Anderson and Ms. Latos transferred the Pine Hill Road Property to Ms. Latos as sole owner, pursuant to their divorce agreement. (ECF No. 14-51.)

### E. The Present Case.

The United States filed its Complaint in this action seeking to enforce its pre-bankruptcy federal tax liens associated with the tax liabilities of Mr. Anderson and Ms. Latos for the years 1994-1997 through a judicial sale of the Pine Hill Road Property. This Court entered the default

of defendant James Anderson on October 31, 2012.[5] (ECF No. 11.) Defendant, the State of Rhode Island, has disclaimed any interest in the Pine Hill Road Property. (ECF No. 5.)

After the application of all abatements, payments, and credits, the amount collectible on the pre-bankruptcy federal tax liens associated with the fully adjudicated and assessed federal tax liabilities of Mr. Anderson and Ms. Latos for the years 1994-1997 described above is $68,616.48 as of February 14, 2013, plus such additional amounts as may accrue from and after that date as provided by law.

**II.     Analysis.**

Section 7403(a) of Title 26 of the United States Code permits an action to enforce federal tax liens[6] against property where taxes remain unpaid.

> In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability.

26 U.S.C. §7403(a). *See also Rodgers*, 461 U.S. at 680-81. "The common purpose of this formidable arsenal of collection tools is to ensure the prompt and certain enforcement of the tax laws in a system relying primarily on self-reporting." *Id.* at 683.

In this case, a plethora of courts have already ruled on the validity of the underlying tax liability. The Tax Court, the U.S. District Court for the District of Rhode Island, the First

---

[5] Mr. Anderson appears to have ceased participating in Ms. Latos' various administrative appeals and court proceedings regarding these tax liabilities around the time of their divorce and bankruptcy in 2004.

[6] Tax liens arise from 26 U.S.C. § 6321. *United States v. Rodgers*, 461 U.S. 677, 681 (1983). Based on her answer to the Complaint, Ms. Latos does not appear to dispute that the statutory period for collecting the taxes at issue in this case did not expire prior to the filing of this complaint. (ECF No. 4.)

Circuit, and the U.S. Supreme Court have all rejected (more than once each) Ms. Latos' argument that she and Mr. Anderson do not owe these taxes. Each court has also affirmed the right of the IRS to collect the liabilities at issue.

> Section 7403(c) of Title 26 of the United States Code provides:
>
> The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.

26 U.S.C. § 7403(c).

Ms. Latos' sole defense to this action is to attempt to re-litigate long-resolved issues about her tax liability. (ECF No. 17.) The proper procedure for raising the substantive claims about her tax liability is to have raised it in the enforcement proceedings below. Ms. Latos did just that on a number of occasions – and lost each time.

The United States asserts that based on the numerous prior court decisions involving these tax liabilities, Ms. Latos is collaterally estopped from challenging the liabilities here, in a proceeding to sell her property in order to satisfy the obligation. This Court agrees. "[A] party wishing to invoke the doctrine of collateral estoppel must establish (1) that the issue to be precluded is the same as that disputed in a prior proceeding, (2) that the issue was actually litigated in the earlier proceeding, (3) that the issue was determined by a valid and binding final judgment or order, and (4) that the determination of the issue in the prior proceeding was essential to the final judgment or order." *Plumley v. S. Container, Inc.*, 303 F.3d 364, 373 (1st Cir. 2003) (citing *Faigin v. Kelly*, 184 F.3d 67, 78 (1st Cir. 1999)). Each of these elements is met because Ms. Latos disputed the ability of the IRS to collect the tax liabilities from her and

Mr. Anderson in the prior proceedings, and the issue was actually litigated. Although those proceedings were to review the propriety of IRS collection actions under an abuse-of-discretion standard, the courts (U.S. District Court for 1994, and the Tax Court for 1995-1997) reached the merits of the liabilities because that was the sole basis of Ms. Latos' challenges, and the courts based their decisions to deny relief on the rejection of her substantive arguments.[7]

Consequently, there is no doubt that a judicial sale of Ms. Latos' property can be ordered. The question then becomes are there any equitable considerations that would stop such a sale. The U.S. Supreme Court has acknowledged that equitable considerations are appropriate in enforcement actions. *Rodgers*, 461 U.S. at 709-12. After carefully reviewing the equities in this matter, this Court concludes that there are no facts that should equitably stop this Court from entering the order requested by the United States. Ms. Latos has fought the validity of these taxes for over seventeen years. She has brought her cause to the highest level of judicial review, and exhausted every avenue of appeal – she has even asked the U.S. Supreme Court to reconsider its denial of her writ of certiorari. Her liability for the taxes from 1994-1997 has been established for a long time, yet she has refused to concede this and make payment on her liabilities. While Ms. Latos argues that foreclosure is inequitable under the *Rogers* factors, the sole basis for this assertion is the fully litigated and resolved matter of whether she owes the taxes. That reason does not give rise to a defense based on equitable consideration.

---

[7] Even if only the prior decisions regarding the 1994 liability (the only year decided by this Court) are considered to have been substantive determinations regarding the merits of the tax liability, Ms. Latos would still be precluded from raising the same issue now with regard to the other tax periods. *See Manganella v. Evanston Ins. Co.*, 700 F.3d 585, 591 (1st Cir. 2012) (noting that, "[i]ssue preclusion . . . can apply where the subsequent proceeding involves a cause of action different from the first . . . the central question is whether a party has had a full and fair opportunity for judicial resolution of the same issue" (internal citations and quotation marks omitted)).

This Court should and does proceed cautiously because this matter involves the sale of a person's home.[8] In fact, the IRS has commented that it "works with taxpayers that have post-bankruptcy dischargeable taxes to advise them of [its] lien interest and attempt to reach a mutually acceptable agreement. Enforcement collection actions are infrequent and are only used as a last resort and under very specific circumstances." *See* IRS Comments to *Taxpayer Advocate Service, 2009 Annual Report to Congress, Vol. I*, 2009 WL 5251017 (I.R.S. Misc. Dec. 31, 2009).

This Court has encouraged the parties to attempt to resolve this matter short of the sale of Ms. Latos' home. U.S. Magistrate Judge Lincoln D. Almond conferred with the parties in an attempt to forge such a resolution. Unfortunately, for all concerned, such a resolution was not forthcoming.

This Court must permit the United States to proceed with the collection of the 1994-1997 tax liabilities against the Pine Hill Road Property because the United States has established all of the prerequisites for its right to enforce the federal tax lien against Ms. Latos and no equitable considerations exist to delay the sale. The argument that Ms. Latos has made in past proceedings and that she appears to be making in this case as well, *i.e.*, that she and Mr. Anderson cannot be held liable for the 1994 FICA tax liability, the 1995 self-employment tax liability, the 1996

---

[8] For example, in *Rogers*, the United States Supreme Court set forth concerns that a court should consider when the sale of the home involves the interests of third-parties. 461 U.S. at 709-10. The *Rogers* opinion directs courts to consider four factors: (i) "the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes," (ii) "whether the third party with a non-liable separate interest in the property would, in the normal course of events . . . have a legally recognized expectation that that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors," (iii) "likely prejudice to the third party, both in personal dislocation costs and in . . . practical undercompensation," and (iv) "the relative character and value of the non-liable and liable interests held in the property." *Id.* at 710-11.

income and FICA tax liabilities, and the 1997 income tax liability, due to the failure of Mr. Anderson's employers to withhold the taxes, which, she contends, the United States can only collect now from the employer, have been fully litigated and adjudicated and therefore are now wholly without merit.

Ms. Latos has failed to establish any genuine dispute of material fact as to whether the government's assessments and all required notices were properly made.

### III. Conclusion.

Because no material facts are in dispute with regard to these tax debts or the enforcement of the lien and the government is entitled to judgment as a matter of law, this Court GRANTS the United States' Motion for Summary Judgment (ECF No. 13). This Court will enter judgment enforcing the federal tax liens through a judicial sale of the Pine Hill Road Property. To the extent that there are excess sale proceeds, the United States shall deposit those excess proceeds with this Court for further proceedings regarding their possible application toward the liabilities of Mr. Anderson and Ms. Latos during other periods.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

June 4, 2013